UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| EMMANUEL T. ANDERSON, : | |
| : | |
| Plaintiff, : | Civ. No. 22-5269 (KM) (JRA) |
| : | |
| v. : | |
| : | **OPINION** |
| OSCAR AVILES, MICHAEL DANTICO, : | |
| HUDSON COUNTY FACILITY, : | |
| : | |
| Defendants. : | |
| : | |

**KEVIN MCNULTY, U.S.D.J.**

Pro se plaintiff Emmanuel T. Anderson, a pretrial detainee at the Hudson County Correctional Facility ("HCCF"), seeks to commence a civil rights action pursuant to 42 U.S.C. § 1983 stemming from allegedly unconstitutional "cruel and unsanitary" conditions related to COVID-19 protocols at HCCF. Anderson's complaint (DE 1) names the following defendants: (1) Oscar Aviles, acting director of the Hudson County Department of Corrections ("HCDOC"); and (2) Michael Dantico, head of the medical department at HCDOC.[1] In a previous order (DE 2), I granted leave for Anderson to proceed *in forma pauperis*, and noted that the complaint would be screened in due course pursuant to 28 U.S.C. § 1915A. Upon having screened the complaint, I now dismiss it without prejudice, for the reasons discussed below.

---

[1] The complaint may also attempt to name HCCF, though that is not clear. Anderson listed "Hudson County Facility" as a defendant in the caption, but did not include that defendant in the "parties" section of his complaint. To the extent he seeks to sue HCCF, the claim is dismissed because a county correctional facility is not a "person" acting under color of state law and, therefore, is not a proper defendant in a § 1983 action. *Rolle v. Essex Cnty. Corr. Facility*, No. 21-15198, 2022 WL 1044968, at *3 (D.N.J. Apr. 7, 2022) (Essex County Correctional Facility is not a "person" subject to § 1983 liability); *Harris v. Hudson Cnty. Jail*, No. 14-6284, 2015 WL 1607703, at *5 (D.N.J. Apr. 8, 2015) (Hudson County Jail is not a person amenable to suit under § 1983).

A.      **Factual Allegations**

The complaint contains the following allegations, which, for screening purposes, I accept as true.

In March 2022, Anderson was transferred to HCCF—evidently from Cumberland County Jail[2]—given a COVID test, and "placed right into population on B-5-East." DE 1 at 8. On July 26, he was moved from a two-man cell into a "dorm setting" in a different housing unit, and, three days later, "a group of inmates from Essex County" moved into that unit. *Id.* One or more of those detainees subsequently tested positive for COVID, and the unit was quarantined. *Id.* A few days later, in early August, the detainees in that unit were given COVID tests; three tested positive and were removed. *Id.* Over the next few weeks, three detainees were moved into the unit, and "we were not tested for [COVID] when these inmates were brought to the unit." *Id.* at 9. On August 18—two or three days after the new detainees had joined the unit—Anderson was moved into a different unit, which was then quarantined. *Id.* At an unspecified time, Anderson requested a COVID test, "was tested days later" (he does not state what the result of the test was), and then "grieved his concern to administration regarding inmates moving on unit without being tested" and received a response stating "classification determination." *Id.* at 4. He does not elaborate further as to the response to his grievance, or provide a copy.

Based on these allegations, Anderson seeks to hold the defendants liable under § 1983 because they allegedly have "failed to establish a COVID-19 policy during this deadly pandemic and [as] a result created cruel and unsanitary conditions in various ways that put my life and

---

[2] The complaint at one point (DE 1 at 13) complains of conditions in Cumberland County, rather than Hudson County where Anderson is currently detained, and appears to indicate that Anderson was transferred from Cumberland County to Hudson County in March 2022. *Id.* Anderson also attaches as an exhibit a consent order entered in March 2021 in 20-cv-7907, relating to conditions in Cumberland County. DE 1-2.

health at risk." DE 1 at 4 (same claims as to both defendants). He seeks "any and all damages deemed fit by the courts for cruel and unusual conditions, health issues mental conditions that jeopardize my life as well health dealing with the spread of covid." *Id.* at 6.

### B. Screening Standard

The Prison Litigation Reform Act ("PLRA") requires district courts to review complaints in civil actions filed by prisoners. *See* 28 U.S.C. § 1915A(a). District courts must dismiss any case that is frivolous, malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. *See* 28 U.S.C. §§ 1915A(b) & 1915(e)(2)(B). "The legal standard for dismissing a complaint for failure to state a claim pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii) is the same as that for dismissing a complaint pursuant to Federal Rule of Civil Procedure 12(b)(6)." *Schreane v. Seana*, 506 F. App'x 120, 122 (3d Cir. 2012) (citing *Allah v. Seiverling*, 229 F.3d 220, 223 (3d Cir. 2000)). That standard is set forth in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007). To survive the court's screening for failure to state a claim, the complaint must allege "sufficient factual matter to show that the claim is facially plausible." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (citation and internal quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Fair Wind Sailing, Inc. v. Dempster*, 764 F.3d 303, 308 n.3 (3d Cir. 2014) (quoting *Iqbal*, 556 U.S. at 678). "[A] pleading that offers 'labels or conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). Pro se pleadings, as always, will be liberally construed. *See Haines v. Kerner*, 404 U.S. 519 (1972). Nevertheless,

"pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013) (citation omitted)

### C. Conditions of Confinement Claim Under 42 U.S.C. § 1983

As Anderson is a pretrial detainee, I construe the allegations summarized above as a civil rights claim pursuant to 42 U.S.C. § 1983 for violations of the Due Process Clause of the Fourteenth Amendment. *See also* DE 1 at 2 (alleging that Court has jurisdiction under § 1983). For the reasons stated below, Anderson's complaint is dismissed for failure to state a claim.

#### 1. Applicable Law

A plaintiff may have a cause of action under 42 U.S.C. § 1983 for certain violations of constitutional rights. Section 1983 provides in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

*Id.* Thus, to state a claim under § 1983, a plaintiff must allege, first, the violation of a right secured by the Constitution or laws of the United States, and second, that the alleged deprivation was committed or caused by a person acting under color of state law. *See Harvey v. Plains Twp. Police Dep't*, 635 F.3d 606, 609 (3d Cir. 2011) (citations omitted).

The Due Process Clause of the Fourteenth Amendment affords protections to pretrial detainees "at least as great as the Eighth Amendment protections available to a convicted prisoner." *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983); *see also Natale v. Camden Cty. Corr. Facility*, 318 F.3d 575, 581 (3d Cir. 2003). Due process or Eighth

4

Amendment standards may be violated when a pretrial detainee is subjected to punishment unrelated to a legitimate governmental objective. *See Hubbard v. Taylor*, 538 F.3d 229, 236 (3d Cir. 2008). The Eighth Amendment requires prison officials to provide humane conditions of confinement. *See Betts v. New Castle Youth Dev. Ctr.*, 621 F.3d 249, 256 (3d Cir. 2010); *see also Farmer v. Brennan*, 511 U.S. 825, 832 (1994). "For the conditions of confinement to rise to the level of an Eighth Amendment violation, they must deny the 'minimal civilized measure of life's necessities.'" *Betts*, 621 F.3d at 256 (quoting *Farmer*, 511 U.S. at 835). Thus, "prison officials violate an inmate's Eighth Amendment rights when they deprive her of a single identifiable human need such as food, warmth, or exercise." *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 226 (3d Cir. 2015); *see also Betts*, 621 F.3d at 256 (inmates must receive "adequate food, clothing, shelter, and medical care," and prison officials must "take reasonable measures to guarantee the safety of inmates"). A "failure to provide minimally civil conditions of confinement to pre-trial detainees violates their rights against punishment without due process of law." *Roman v. DeMarco*, No. 18-8010, 2019 WL 452736, at *2 (D.N.J. Feb. 5, 2019) (citing *Reynolds v. Wagner*, 128 F.3d 166, 173–74 (3d Cir. 1997)).

"Unconstitutional punishment typically includes both objective and subjective components." *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007). "[T]he objective component requires an inquiry into whether the deprivation was sufficiently serious and the subjective component asks whether the officials acted with a sufficiently culpable state of mind." *Id.* (cleaned up). To meet the objective component, the conditions must "cause inmates to endure such genuine privations and hardship over an extended period of time, that the adverse conditions become excessive in relation to the purposes assigned to them." *Hubbard*, 538 F.3d at 233 (cleaned up). To meet the subjective component, a detainee must assert that prison officials

5

acted with deliberate indifference, meaning that they consciously disregarded a serious risk to the detainee's health or safety. *See Wilson v. Seiter*, 501 U.S. 295, 298–99 (1991).

A supervisor may not be held vicariously liable for the actions of subordinates. *See, e.g.*, *Chavarriaga v. N.J. Dep't of Corr.*, 806 F.3d 210, 222 (3d Cir. 2015). To adequately plead a plausible § 1983 claim against Aviles and Dantico, Anderson must plead facts which, if proven, would show that these defendants were personally involved in the alleged wrongs. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207–08 (3d Cir. 1988). Anderson must plausibly allege, among other things, that Aviles and Dantico enacted a policy, practice, or custom that was the "moving force" behind an alleged constitutional violation.[3] *City of Canton v. Harris*, 489 U.S. 378, 389 (1989); *see also Los Angeles Cnty. v. Humphries*, 562 U.S. 29, 35–36 (2010).

The Third Circuit addressed COVID-19 in the prison setting in *Hope v. Warden York County Prison*, 972 F.3d 310 (3d Cir. 2020), explaining that when evaluating a detention facility's protocols, courts "must acknowledge that practical considerations of detention justify limitations on many privileges and rights," and "ordinarily defer" to the expertise of prison officials in responding to COVID unless there is "substantial evidence in the record that the officials have exaggerated their response" to the situation. *Id.*

---

[3] Under a second theory of supervisory liability, a supervisor may be held liable when "he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." A.*M. ex rel. J.M.K. v. Luzerne Cnty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004). Knowledge, for these purposes, means "contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents." *C.H. ex rel. Z.H. v. Oliva*, 226 F.3d 198, 202 (3d Cir. 2000). Here, Anderson does not allege Aviles and Dantico participated in or had actual knowledge of the allegations in his complaint. Rather, Anderson's allegations against these defendants are targeted at their alleged failure to enact an effective COVID-19 policy, which allegedly created "cruel and unsanitary conditions." DE 1 at 4. Thus, I analyze Anderson's claim against these defendants under the supervisory theory of liability targeting policymakers.

### 2. Analysis

The essential allegations of Anderson's complaint are that approximately three or four other detainees in his unit tested positive for COVID and were removed from his unit; he has been subjected to periods of quarantine; detainees have joined his unit during periods of quarantine without first being tested or quarantined; there was at least one occasion on which he requested to be tested for COVID-19 but was not tested as quickly as he believed he should have been; and he feels his health is at risk because he is potentially being exposed to COVID in a detention setting where social distancing is often not feasible. These allegations, even if true, do not support a finding that the defendants acted with a culpable state of mind, nor do they rise to the level of "cruel and unusual punishment" necessary to state a claim for unconstitutional conditions of confinement.

First, if Anderson claims his constitutional rights were violated merely by having been exposed to the virus, or by being at an increased risk of exposure to the virus, the allegation is insufficient. Exposure alone does not establish a constitutional violation. *See Hope*, 972 F.3d at 329 (rejecting petitioners' arguments that exposure to COVID-19 was per se unconstitutional and that the Government must eliminate their risk of exposure to comply with constitutional mandates).

Aside from potential exposure, Anderson also alleges that prison officials have not tested or quarantined detainees when Anderson believes testing or quarantine was warranted. These allegations also do not establish that the defendants consciously disregarded a serious risk to Anderson's health or safety. Anderson does not allege, for example, that he contracted the virus; that no testing, quarantining, or other preventive measures are being taken; or that he or other detainees were denied medical treatment after becoming seriously ill. To the contrary, his

complaint appears to establish that prison officials are attempting to take measures—such as testing and quarantining—aimed at mitigating the threat of COVID-19. *See id.* at 330 (noting the "challenges inherent in the detention setting" and that "CDC guidance suggests placing detainees into cohorts where social distancing is not practical"). Anderson alleges, for example, that when other detainees in his unit have tested positive for COVID, they have been removed and segregated from other non-COVID-positive detainees. DE 1 at 8 (alleging that on August 3 a detainee who had transferred from Essex County was removed from Anderson's unit after testing positive); *id.* at 9 (alleging that on August 8 three detainees were removed from Anderson's unit after testing positive). His complaint amounts to a difference of opinion about the adequacy or advisability of particular measures.

At most, Anderson alleges that other detainees in his unit tested positive for COVID, and that he and others were not tested and/or quarantined to the extent that he believes should have occurred. But imperfections in the testing and quarantining procedures—particularly in the challenging environment of a pretrial detention center—do not, without more, amount to unconstitutional conditions of confinement or punishment. *See Youngberg v. Romeo*, 457 U.S. 307, 325 (1982) (under the Due Process Clause, "whether respondent's constitutional rights have been violated must be determined by balancing his liberty interests against the relevant state interests"); *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007) (quoting *Rapier v. Harris*, 172 F.3d 999, 1005 (7th Cir. 1999)) ("[A] particular measure amounts to punishment when there is a showing of express intent to punish on the part of detention facility officials, when the restriction or condition is not rationally related to a legitimate non-punitive government purpose, or when the restriction is excessive in light of that purpose."); *Whitley v. Albers*, 475 U.S. 312, 319 (1986)

("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock.").

For these reasons, Anderson's claims are dismissed for failure to state a claim pursuant to § 1915(e)(2)(B)(ii). This is, however, an initial dismissal, and I cannot state that amendment would be futile. Consequently, this dismissal is without prejudice to the filing, within 60 days, of a proposed amended complaint. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108, 110 (3d Cir. 2002) (leave to amend claims dismissed on screening should generally be granted unless amendment would be inequitable or futile).

### D.  Conclusion

For the reasons stated above, Anderson's complaint (DE 1) is dismissed without prejudice as to defendants Aviles and Dantico, and with prejudice as to "Hudson County Facility" or HCCF (to the extent Anderson intended to sue HCCF). Anderson may file a proposed amended complaint within 60 days. An appropriate order follows.

Dated: October 12, 2022

/s/ Kevin McNulty
_____
HON. KEVIN MCNULTY
United States District Judge

9